UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHEILA ALFORD,

    Plaintiff,

        v.

PROVIDENCE HOSPITAL,

    Defendant.

Civil Action No. 10-132 (JEB)

## MEMORANDUM OPINION

After failing to obtain a new position with Defendant Providence Hospital, Plaintiff Sheila Alford, who requires the use of a wheelchair, brought this action alleging that she was passed over because of her disability. Following discovery, Defendant filed this Motion for Summary Judgment, arguing that it hired a superior candidate for the position. Because no reasonable jury could find that Defendant's hiring decision was a pretext for discrimination, the Court will grant Defendant's Motion.[1]

**I.    Background**

Until recently, Plaintiff worked for Defendant as a Unit Secretary, a position that she held for 27 years. Plaintiff became disabled in 1991 and has used a wheelchair ever since. In early 2007, Plaintiff twice applied for the position of Discharge Planning Associate (DPA) in the Case Management Department. Motion, Exh. M (Employment Application of Sheila Alford). This is an administrative position that assists the social workers, nurse managers, and other department staff in discharging patients from the hospital. Motion, Exh. C (Deposition of Wanda English) at 29-30.

---

[1] The Court has reviewed Defendant's Motion, Plaintiff's Opposition, and Defendant's Reply.

1

Several other internal applicants submitted applications as well, including Alexis Sydney-Hunter, the eventual selectee. Motion, Exh. N (Answer to Interrogatory No. 11); Motion, Exh. O (Employment Application of Alexis Sydney-Hunter). Like Plaintiff, Sydney-Hunter worked as a Unit Secretary, a position she held since 1994. Both Plaintiff and Sydney-Hunter interviewed for the DPA position with Wanda English, the Director of the Case Management Department at that time. English Dep. at 39. In addition to the interviews, English reviewed both candidates' performance evaluations, consulted with the candidates' supervisors and other hospital employees, and observed the candidates herself. Id. at 11-13, 39, 43, 45.

At the end of this process, English selected Sydney-Hunter for the DPA position. English testified that she chose Sydney-Hunter because she thought she was a "better match for the department." Id. at 52. English believed that both Plaintiff and Sydney-Hunter were qualified, but she felt that Sydney-Hunter had the appropriate personality for the position. Id. at 51-53. During her observations, English said that Plaintiff was "aggressive," "abrupt," and "not always helpful." Id. at 73-74. In addition, English stated that other staff members had complained to her about Plaintiff's demeanor. Id. at 13, 16, 78-79. In comparison, English explained that she had never received any negative feedback about Sydney-Hunter; in fact, she had heard positive comments from her future co-workers in the Case Management Department. Id. at 53, 94-95. Ultimately, English wanted to change the image of her department and believed that Sydney-Hunter was the better fit for the position. Id. at 71. English testified that the fact that Alford had paraplegia did not affect her decision at all. Id. at 95-96.

Following her non-selection, Alford filed a claim with the Equal Employment Opportunity Commission in 2007, alleging discrimination on the basis of her disability. The matter was transferred to the District of Columbia Office of Human Rights for investigation, and

eventually the EEOC issued a Notice of Right to Sue to Plaintiff in August 2009. A Complaint was filed in the Superior Court of the District of Columbia on November 16, 2009, and the case was removed to this Court in January 2010. After discovery, Defendant filed this Motion for Summary Judgment.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895. The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc., v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987). "Until a movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C. Cir. 1976). When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric

3

Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). She is required to provide evidence that would permit a reasonable jury to find in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. Analysis

The Americans with Disabilities Act makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[T]he two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability." Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

There is no dispute that Plaintiff suffered an adverse employment action when she did not obtain the DPA position. The question to be answered here is whether that adverse employment action was "because of [Plaintiff's] disability." Id.

In making such a determination, the Court must apply the following streamlined analysis:

> [I]f an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action, the district court must conduct one central inquiry in consideration of an employer's motion for summary judgment or judgment as a matter of law: whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis.

Id. (citing Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 493-95 (D.C. Cir. 2008)).

Defendant has offered a legitimate, nondiscriminatory reason for choosing Sydney-Hunter over Plaintiff: while both candidates were qualified for the position, Sydney-Hunter was "a better match for the department." English Dep. at 52; see, e.g., Benjamin v. Duncan, 694 F. Supp. 2d 1, 7 (D.D.C. 2010) (finding that, absent viable showing of pretext, the court will defer to defendant's "judgment call that [the selectee] would be a better fit for the position than the plaintiff").

This general language, moreover, does not stand unexplained and unsupported; on the contrary, English testified in some detail about what she meant. She explained in her deposition that she believed Sydney-Hunter was a better match because she had the "appropriate personality type." English Dep. at 51-52. Asked to explain further, she elaborated that several people had complained to her about Plaintiff's people skills, while she had heard no similar complaints about Sydney-Hunter. Id. at 78-79. In fact, English stated that she had received positive feedback from others in the Case Management Department about Sydney-Hunter. Id. at 94-95. English, moreover, said that in her own experience, she had found Plaintiff uncooperative with

nurses. Id. at 74.  She thought that Plaintiff could be "aggressive" and would "add controversy to the already existing [difficult] personalities" in the Case Management Department.  Id. at 70. Because English wanted to "chang[e] the perception of [her] department . . . to reflect a more cooperative, professional spirit," she valued this factor over others.  Id. at 70-71; Barnette v. Chertoff, 453 F.3d 513, 517 (D.C. Cir. 2006) ("[C]ourts must defer to the employer's decision as to which qualities required by the job . . . it weighs more heavily.").

As Defendant has asserted a legitimate, nondiscriminatory reason for choosing Sydney-Hunter, the Court must now determine whether Plaintiff has "produced sufficient evidence for a reasonable jury to find [this] reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  Adeyemi, 525 F.3d at 1226 (citing Brady, 520 F.3d at 493-95).  Plaintiff puts forth two central arguments to undercut the legitimacy of Defendant's decision.  First, she claims English's credibility is questionable.  Second, she contends that her better qualifications demonstrate that the decision must have been based on her disability.

In endeavoring to attack English's credibility, Plaintiff fails to offer any record evidence that actually impeaches her.  For example, she cites statements from Sydney-Hunter that she liked Plaintiff and had never seen her be aggressive, but Plaintiff has not shown that Sydney-Hunter's opinion had any effect on English's own beliefs or observations.  Plaintiff next points to Sydney-Hunter's admission that she had communication issues with several doctors or nurses in her unit, but there is no evidence that English knew about these incidents at the time of her decision.  Finally, Plaintiff attempts to contradict English's statements about meeting with Sydney-Hunter's supervisor, but the record does not support her assertion.  See Reply, Exh. T (Supplemental Declaration of Wanda Daughtry).  Plaintiff is left with nothing more than

6

conclusory assertions. While her language may be colorful -- *e.g.*, comparing English's statements to unsubstantiated allegations from the McCarthy era -- purple prose does not constitute actual record evidence to challenge Defendant's submissions.

In examining Plaintiff's second argument regarding qualifications, the Court bears in mind that where, as here, an employer's legitimate, nondiscriminatory reason "rel[ies] heavily on subjective considerations," the Court must treat it with caution. Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1298 (D.C. Cir. 1998). Our Circuit has observed that "heavy use of 'highly subjective' criteria, such as 'interpersonal skills,' could support an inference of discrimination." Id. (citing cases). For a jury to infer discrimination here, it must be able to find Plaintiff was "significantly better qualified for the job" than Sydney-Hunter. Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006) (emphasis added). The difference must be "great enough to be inherently indicative of discrimination." Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal quotation marks omitted). Only then could a jury "legitimately infer that the employer consciously selected a less-qualified candidate -- something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." Id. (internal quotation marks omitted). "In a close case, a reasonable [fact-finder] would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." Aka, 156 F.3d at 1294. Deference to the employer is therefore appropriate in close cases because otherwise the Court would function as "a super-personnel department that reexamines an entity's business decisions – a role which [the D.C. Circuit has] repeatedly disclaimed." Jackson, 496 F.3d at 707 (internal quotation marks omitted).

7

A jury could not find that such a stark gap in qualifications exists here. Even with the benefit of all inferences from the evidentiary record, Plaintiff has demonstrated that, at best, she was only slightly more qualified for the DPA position. "It is well-settled that plaintiff may not overcome a legitimate exercise of defendant's nondiscriminatory business judgment regarding an applicant simply by showing that she may be equally, or slightly more, qualified." Armstrong v. Jackson, 2006 WL 2024975 at *8 (D.D.C. July 17, 2006) (citing Holcomb, 433 F.3d at 897).

Defendant's internal hiring regulations for all positions provide for consideration of the following factors: educational requirements for the position, experience requirements for the position, special skills, review of personnel file, job-related tests, internal recommendations, and seniority. Motion, Exh. B (Providence Hospital Policy 16.25(II)(K)) at 3. No factor necessarily carries more weight than any other, and hiring managers are free to consider unlisted criteria. Motion, Exh. A (Affidavit of Yomi Fabiyi). This particular DPA position required: (1) a high school education or equivalent; (2) experience in the healthcare field; and (3) knowledge and skills in medical terminology and basic administrative technologies. Motion, Exh. D (DPA Position Description) at 1. The "essential functions/performance standards" of the DPA position were allocated as follows: 20% for job knowledge; 15% for quality of work; 15% efficiency; 20% for human relations/communications; 15% for maturity/responsibility; and 5% for attendance. Id. at 3-5.

In evaluating the alleged qualifications gap, the Court must assess the qualifications necessary for the position at issue, rather than considering the candidates' qualifications in a vacuum. Here, both candidates had the required high school education.[2] Opp., Exh. 1

---

[2] Plaintiff has received a Bachelor's degree and is working on a Master's, but her increased education does not necessarily make her more qualified for the administrative duties of the DPA position. In fact, English considered her overqualified from an educational standpoint and was concerned that Plaintiff would become bored and leave the position after a short time. English Dep. at 45-46.

8

(Deposition of Alexis Sydney-Hunter) at 11. Both candidates had significant experience as Unit Secretaries -- Plaintiff for 27 years and Sydney-Hunter for 13 years. Sydney-Hunter Dep. at 10. Although Plaintiff had worked longer, both candidates were in their positions for enough time to gain comparable experience. Both candidates also received written warnings. Reply, Exhs. X-Y. Plaintiff's performance evaluations were slightly better overall, but Sydney-Hunter's were still quite good. Compare Opp., Exh. 4 (Sydney-Hunter Evaluation) with Opp., Exh. 5 (Alford Evaluation). Sydney-Hunter apparently had some attendance issues, but attendance was valued at only 5% of the position, and any concerns that English had were apparently dispelled by Sydney-Hunter's manager, who recommended her to English. Motion, Exh. P (Affidavit of Wanda Daughtry); see also Daughtry Supp. Aff. Finally, Plaintiff was recommended by a doctor from her unit, Opp., Exh. 6, while Sydney-Hunter was recommended by several employees from the Case Management Department. English Dep. at 94-95. On these topics, therefore, a jury could find Plaintiff slightly better qualified.

A key qualification here, however, was human relations and communication. Not only did this make up 20% of the performance standards, see Motion, Exh. D at 3-5, but English stressed that she valued this trait over others because she wanted to change the perception of the department. English Dep. at 70-71. While Alford scored slightly higher in her performance evaluations on this topic than Sydney-Hunter, English also considered her own observations and the observations of others in evaluating this factor. As discussed above, English personally observed communication problems with Plaintiff, id. at 73-74, and other employees complained about Plaintiff's behavior to her. Id. at 78-79. By contrast, English heard nothing but positive comments about Sydney-Hunter, who had previous experience working with the Case Management Department. Id. at 53, 94-95. Even viewing the evidence in the light most

9

favorable to Plaintiff, Sydney-Hunter had equal or superior human relations and communication qualifications.

Adding this last factor to the balance sheet, no jury could find Plaintiff more than slightly better qualified than Sydney-Hunter. Indeed, a jury could easily find her less so. Because this minor edge is not sufficient, Defendant must prevail. See Armstrong, 2006 WL 2024975 at *8 (granting summary judgment in part for employer because, even assuming plaintiff was slightly more qualified, "no reasonable jury could find that plaintiff is significantly better qualified than any of the three selectees"). At bottom, the contrast between Plaintiff's and Sydney-Hunter's qualifications for the DPA position was not "great enough to be inherently indicative of discrimination." Jackson v. Gonzales, 496 F.3d at 707 (internal quotation marks omitted); see also Benjamin, 694 F. Supp. 2d at 7 (deferring to employer's decision where decision-maker believed selectee's prior work experience demonstrated his "communicati[on] and people skills" while decision-maker and other employees believed plaintiff was difficult to work with); cf. Aka, 156 F.3d at 1296 (finding evidence of qualifications gap sufficient to defeat summary judgment where the plaintiff had 19 years of relevant work experience, while selectee had two months of volunteer experience).

Plaintiff "cannot defeat summary judgment simply by pointing to 'small differences in the qualifications of the candidates' or identifying a situation in which the 'employer simply made a judgment call.'" Benjamin, 694 F. Supp. 2d at 7 (quoting Barnette, 453 F.3d at 518). Here, English made a judgment call that Sydney-Hunter was a better fit for the position than Plaintiff, and the Court "will defer to that decision absent a viable showing of pretext." Id. As Plaintiff has failed to make such a showing, the Court concludes that there are no genuine issues of material fact here that would warrant proceeding to trial.

**IV.     Conclusion**

The Court therefore ORDERS that:

1. Defendant's Motion for Summary Judgment is GRANTED; and

2. The case is DISMISSED.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 14, 2011